# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| THREE DOG BAKERY, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:25-cv-00217-DGK |
| CRIT, INC., et al., | ) |
| Defendants. | ) |

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

This case arises out of a soured business relationship between a franchisor and franchisee. Plaintiff Three Dog Bakery, LLC alleges that Defendants Crit, Inc. ("Crit"), Robert Critselous, and Paula Critselous breached the franchise agreement and misappropriated Plaintiff's trade secrets when they opened a pet bakery out of the same location in Bentonville, Arkansas that they previously operated Plaintiff's franchise out of, which, coincidentally, was also a pet bakery.

Now before the Court is Plaintiff's Motion for Preliminary Injunction. ECF No. 3. Plaintiff requests a preliminary injunction enjoining and restraining Defendants from violating the franchise agreement's noncompete provision and using its confidential information, licensed marks, equipment, and processes.

After carefully reviewing the motion and the existing record, the Court holds Plaintiff has met its burden for the Court to issue a preliminary injunction. The request for preliminary injunction is GRANTED.

### Background

The relevant facts are set forth in the Verified Complaint, ECF No. 1, and are not in dispute. These facts are as follows.

Plainitff owns a system for the establishment and operation of Three Dog Bakery branded stores, called Fresh Bakeries, that sell fresh baked goods for pets. Each Fresh Bakery bakes personalized fresh cakes, muffins, pastries and novelty baked items on site for sale, and offers pre-made dog food, dog cookies, dog biscuits, dog training treats, and cat treats supplied by Plaintiff.

As the only pet store concept selling fresh baked goods, Plaintiff has distinguished itself from its competitors by providing fresh-baked products to its clients. As part of its business, Plaintiff licenses others to operate Fresh Bakeries using its licensed marks, system of operation, and confidential business information including proprietary recipes, production equipment, bakery systems, customer information, and operation manuals and techniques (collectively, "Confidential Information"). Under this model, franchisees not only pay Plaintiff royalties and marketing fees, but purchase specialized products and ingredients from it.

On or about March 31, 2015, Robert Critselous executed a franchise agreement on behalf of Crit and began operating a Three Dog Bakery in Bentonville, Arkansas (the "Franchise"). The franchise agreement was renewed in December 2021 which extended the Franchise's term to December 7, 2026.

The franchise agreement contained several provisions relevant to the instant motion. Under the agreement Defendants were: (1) required to pay a monthly royalty and marketing fee; (2) given access to Plaintiff's Confidential Information; and (3) prohibited from operating a competing business within fifty (50) miles of the Franchise or any other Fresh Bakery for two (2) years. The franchise agreement also gave Plaintiff the right to assume the Franchise's lease and operate the Fresh Bakery in the event Defendants terminate the agreement.

In July 2024, Defendants ceased buying products from Plaintiff, and several months later, began withholding royalty and marketing fee payments. In March 2025, Plaintiff learned the

2

Defendants had ceased operating the Franchise and, instead, began operating Drooly's A Dream Dog Bakery ("Drooly's") from the same location serving the same customers. One of Plaintiff's top selling dog treats nationally, as well as at the Franchise, is the "Drooly Dream Bar." Based on the parties' briefing, Plaintiff was not given an opportunity to assume the lease as permitted by the franchise agreement.

Plainitff sent an independent investigator to the Franchise on March 17, 2025. At that time, Plaintiff's trademarked logo still appeared above the storefront and on its door. In addition, Defendants were using Plaintiff's Confidential Information, including but not limited to, its proprietary recipes and designs. For example, one of the dog treats in Plaintiff's Operating Manual is a green beer mug called "GRR-een Beer Cookie." Defendants were selling identical beer mug treats called "GrrEEN BEER COOKIE."

Since this case was filed, Defendants have removed some of Plaintiff's signage from the Franchise and are apparently no longer using Plaintiff's recipes, products, or manuals. However, it is unclear whether any of Plaintiff's Confidential Information has been returned.

## Standard for Issuance of a Preliminary Injunction

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). The factors this Court considers in any such request are: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; (3) the likelihood that the moving party will prevail on the merits; and (4) the public interest. *Phelps-Roper v. Nixon*, 509 F.3d 480, 484 (8th Cir. 2007) (citing *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). No single factor is determinative; they "must be balanced

to determine whether they tilt towards or away from granting" the injunction. *Noodles Dev., LP. v. Ninth St. Partners, LLP*, 507 F. Supp. 2d 1030, 1034 (E.D. Mo. 2007).

## Discussion

### I. Plaintiff has not demonstrated a threat of irreparable harm.

To demonstrate a sufficient threat of irreparable harm, the moving party must show that there is no adequate remedy at law; that is, that an award of damages cannot compensate the movant for the harm. *See id.* at 1036–37. Irreparable harm must be certain and imminent such "that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Possible or speculative harm is not sufficient. *See Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone / Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir. 1995). "Failure to show irreparable harm is an independently sufficient ground upon which to deny preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Here, Plaintiff argues it will suffer irreparable harm in the form of lost customers and goodwill if Defendants continue operating a competing business out of the same location as the Franchise. This argument is persuasive.

First, the franchise agreement clearly grants Plaintiff the right to assume the lease and continue operating the Franchise if Defendants terminate the agreement. *See* Collateral Assignment of Lease, ECF No. 1-1 at 63 (noting that "upon expiration or termination of the Franchise Agreement or this Agreement, [Plaintiff] has the right and is hereby empowered to take possession of the Store Site [and] expel [Defendants] therefrom"). Plainitff was not given the opportunity to do so before Defendants rebranded as Drooly's. As a result, Plaintiff is left with two untenable options: (1) allow Defendants to continue breaching the franchise agreement—

4

including the noncompete provision—resulting in lost customers, dilution of brand integrity, and setting a risky precedent for other franchisees; or (2) enforce its rights under the lease assignment, risking negative public perception as an out-of-state franchisor displacing a local, family run business. Neither option fosters goodwill or protects Plaintiff's reputation with its customers, and both underscore the need for injunctive relief to preserve the status quo.

Second, there is ample evidence Defendants have used Plaintiff's Confidential Information, including its signage, licensed marks, recipes, and product designs. Defendants state they have removed signage and ceased using other Confidential Information. But Defendants did so only in response to this lawsuit, and Plaintiff's Confidential Information has not yet been returned. Based on these facts, there is a threat Plaintiff could be irreparably harmed by the continued use or mishandling of its Confidential Information.

Lastly, Plaintiff argues that Defendants' violation of the noncompete agreement amounts to per se irreparable harm. Courts, including this one, have held that violating a valid noncompete provision may support an inference of irreparable harm. *Church Mut. Ins. Co. v. Sands*, No. 14-CV-3119-S-DGK, 2014 WL 3907831, at *3 (W.D. Mo. Aug. 11, 2014) (citing *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir.1984)). This is particularly true when, as in this case, the breach creates a risk that the franchisee's competition will harm Plaintiff's "goodwill, reputation, and customer relationships, [as well as] deprive it of control over its trademarks." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). As outlined above, these risks are present here.

As such, the first factor weighs in favor issuing a preliminary injunction.

## II. Plaintiff has shown the balance of harms favors issuing a preliminary injunction.

Plaintiff argues that without the issuance of a preliminary injunction the risk to them is great. Plaintiff also contends that Defendants will not suffer any harm because "injunctive relief will merely require Defendants to comply with contractual obligations that they knowingly and voluntarily agreed to." Suggestion in Supp. at 24. Defendants do not address this factor or Plaintiff's argument. As such, the second factor slightly favors Plaintiff, but carries little weight in the analysis.

## III. Plaintiff has shown a likelihood of success on the merits.

To demonstrate likelihood of success on the merits, a movant does not need to show that it ultimately will succeed on its claims, only that the movant's prospects for success is "at least . . . *sufficiently likely* to support the kind of relief it requests." *Noodles Dev.*, 507 F. Supp. 2d at 1034 (emphasis added) (quotation omitted). That is, the movant need only show "a fair chance of prevailing." *Phelps-Roper*, 509 F.3d at 485 (quotation omitted).

Here, Plainitff will likely succeed on the merits of its breach of contract and misappropriation of trade secret claims. There is ample evidence in the record that the parties had a franchise agreement that addressed: (1) royalty and marketing fees; (2) use of Confidential Information and licensed markings; and (3) operating a competing business. There is also ample evidence suggesting Defendants have violated one or more of these provisions. As such, Plaintiff has at least a fair chance of prevailing on at least some of its claims.

In opposition, Defendant's argue that Plaintiff lacks standing to pursue its claims because it allegedly "breached the franchise agreement in numerous respects" and "sold the trade secrets, including proprietary recipes, supplies, customer lists, and trademarks to a third party." Suggestions in Opp'n at 9, ECF No. 15. This argument is unavailing. Besides citing the general

6

elements of standing, Defendants cite no authority or explain for how their allegations impact standing in *this* case. *See id.* at 9–10. And "[i]t is not this court's job to research the law to support an appellant's argument." *United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008) (cleaned up).

As such, the third factor weighs in favor of issuing a preliminary injunction.

### IV. The public interest does not weigh in Plaintiffs' favor.

The Court finds the public interest does not favor either granting or denying the request for a preliminary injunction. Thus, this factor does not weigh in favor of either side.

### V. Plaintiff has carried its burden.

After balancing the four factors, the Court holds Plaintiff has clearly shown entitlement to a preliminary injunction.

### Conclusion

Plaintiff's request for a preliminary injunction is GRANTED. Accordingly, it is hereby ORDERED that Defendants, their agents, officers, employees, and all other persons and entities in active concert or participation with them are restrained and enjoined from the following:

(1) operating Drooly's A Dream Dog Bakery within fifty (50) miles of the Franchise or within fifty (50) miles of any other Fresh Bakery location;

(2) using Plaintiff's licensed marks;

(3) retaining, revealing, making known, or using any Confidential Information they have acquired;

(4) retaining or using any furniture, fixtures, advertising materials, and other articles that belong to Plaintiff or display any of licensed marks; and

(5) retaining or using any of Plaintiff's property, including its Operating Manual.

**IT IS SO ORDERED.**

Date:  June 4, 2025             /s/ Greg Kays
                                GREG KAYS, JUDGE
                                UNITED STATES DISTRICT COURT